## AININI *vs.* KALA.

### IN EQUITY.    BEFORE HARTWELL, J.

### JUNE, 1869.

Courts of Equity have no more discretionary powers than Courts of Law; they decide cases on principles as fixed and certain as those of common law.

A deed set aside for fraud, it appearing that the grantor was aged and ignorant; that the price was inadequate, and that the grantor reposed trust and confidence in the grantee, of which the latter took undue advantage.

### DECISION OF HARTWELL, J.

The Bill, after setting out the complainant's title to certain land on Nuuanu street, Honolulu, avers that in November, 1868, the respondent asked her to lease to him for thirty years, at an annual rental of $5, her dry, or kula land, the same being a small portion of her said land, and that she agreed so to do; that December 2, 1868, complainant went, at respondent's request, to the house of one Kahale, where one Levi Keliipio produced a paper as the lease agreed upon, and read the same to her, partially, as a lease, said Keliipio and the respondent falsely stating to her that the same was a lease of the said portion of her land, and that the complainant believing said statement, and not knowing how to read or write, affixed her mark to said paper, acknowledged the same before the Register, and received $5 as the first year's rent; that complainant, about December 10, 1868, obtained a copy of said paper, from which it appears that the same was not a lease of her kula land, but a warranty deed of sale of all her land, the value whereof was at least $600, and which she never desired or intended to sell; that she was advised and assisted by no person in this transaction, but acted solely upon the statements 'falsely and fraudulently made to her as aforesaid by the respondent and said Keliipio.

The complainant tenders in Court the $5 paid her, and prays that the said instrument be declared void, and the respondent ordered to deliver up and re-convey to her the premises.

The answer denies that respondent ever requested a lease, or that any conversation about a lease ever occurred between the parties, and avers that for many months previous to said November, complainant had been supported by respondent, at his house, and that she desired him to go and live upon her said land, but fearing to be molested by complainant's relatives, he declined so to do unless she would sell the land to him; whereupon the complainant agreed to sell, declining the respondent's suggestion to reserve to herself a life interest; and the deed in question was drawn by her instructions. The averments in the Bill of false and fraudulent statements are denied, but it is alleged that the deed was read and explained to the complainant, as a deed of sale, in the presence of several witnesses, before whom she acknowledged the same, and that when acknowledging before the Register, she assented to his question if it was a "palapala kuai" (deed of sale).

The answer further avers the respondent to be the son of one Paliola, a woman related to the complainant, and her aikane from early youth, and that by Hawaiian custom the complainant regarded the respondent as her own son, and desired to sell the land to him to protect herself against the encroachments of one Kunahihi, her nephew, who had sold her house from off her land and thrown her movables out of doors.

## BY THE COURT.

The complainant seeks to have the Court exercise its equity jurisdiction by setting aside a conveyance of land, and declaring void a deed of sale which, on its face, appears to be good in law. This is an important case, as are all cases involving questions concerning titles in land. Particularly in this country, it is desirable firmly to maintain those rules of law and statute, by which land titles are secured under deeds executed with all solemn formalities. Real property would scarcely deserve its

name, if, except for strong and clear reasons, parol evidence were admitted to supersede duly executed and recorded instruments under seal.

Nevertheless, equity jurisdiction is granted to protect the helpless and ignorant against their own improvident acts, to which they have been induced by false representations from those in whom they had reposed especial trust. Violations of trust, and undue advantage taken of credulity and ignorance, furnish the groundwork of a large number of cases in which equity relieves.

It is popularly supposed that the province of Equity is to set aside the rigid rules of common law and ancient precedents, and to decide arbitrarily, according to the merits and hardships of each case. Nothing is further from the truth or more full of danger to the administration of justice than such a doctrine. Under the Constitution and Laws, no Court can exercise a discretionary power in defiance of sound and established principles, both of law and equity. "There are certain principles on which Courts of Equity act which are very well settled. The cases which occur are various, but they are decided on fixed principles. Courts of Equity have, in this respect, no more discretionary power than Courts of Law. They decide new cases as they arise by the principles on which former cases have been decided; but the principles are as fixed and certain as the principles on which the Courts of common law proceed." Lord Redesdale, in *Bond vs. Hopkins,* 1 Sch. and L., 428.

First: What was the consideration of this deed?

There is some evidence on the part of the respondent that he had agreed, in part payment, to support the complainant, but the deed sets out no such agreement, and it is denied by the complainant. The complainant may have expected to live with respondent in a house he was to build on her kula land, and this may have been an inducement to her to sell or lease; but the evidence on this point is not entirely satisfactory. Probably there was a friendly feeling between the parties; the complainant in her short stay in Honolulu had lived in respondent's

house, and he was an adopted son .of a brother of her aikane, Paliola. Her near relatives here, a nephew and two nieces, had not supported her, but whether this was from inability or unwillingness, does not appear. The evidence shows no hostility existing between her and these relatives, and does not sustain the allegation in the answer that they had sold her house and thrown out her furniture.

The respondent's counsel argue that while the consideration expressed was sufficient to support the deed, the real consideration was that of love and affection, and was sufficiently expressed by the deed in the words "keiki a kuu aikane." A good or meritorious consideration—by which is usually intended a consideration of love and affection between parties related by blood or marriage—or a valuable or pecuniary consideration, however small, may support a deed. Nor is there anything to prevent one, so far as he is himself affected, from making a deed of gift of land. The statute of 27 Eliz., said to affirm the common law, only avoided voluntary conveyances in favor of subsequent *bona fide* purchasers for value. Admitting that the relations shown to exist between the parties would be sufficient to form a good consideration, and that deeds here are often drawn in an inartificial manner, still I cannot regard this as a deed of gift. The words "keiki a kuu aikane" merely describe the grantee. The deed expressly makes $5 the full consideration and makes no reference to any other. If the complainant had intended to give away her land I think she would have said so, and that the deed would hardly fail to express such intention.

The witness Kahale testified that the respondent gave him $5 to say that this was a deed of sale, whereas he knew it was a lease. I do not, however, place much confidence in this witness. It is not likely that he alone, of those present at the execution of the deed, would have been bribed, nor would it seem necessary to bribe him. Probably none but the attorney knew a lease from a deed of sale on hearing it read, nor could they know how much of the deed was read. They might not note

the exact description of the premises.  The witness Mele says:
"perhaps the consideration was $5 a-year, or $5"; she is not
sure, as she did not attend particularly.

To support the allegation of an agreement to lease the kula
land, the witness Kamaka testifies that he had heard the re-
spondent say he would take a lease for thirty years at $5 annual
rent, and he heard complainant say he might have it.
Kailimai, Kamaka, and Akoni testify that the day after the date
of the deed, the respondent said he obtained such a lease, and
Mr. Beckwith testified that the complainant made such a state-
ment to him.

Previous agreements to lease are not inconsistent with a
private sale, and both parties may have private reasons to call
this a lease, contrary to the fact.  Kala may have wished to
avoid trouble with the relatives, and Ainini may have been
induced to retract.  But I must look at all the circumstances of
this transaction.  The complainant's entire interest in this land
was worth from $600 to $800.  She is evidently aged, ignorant,
and dependent.  A lease of the kula land for thirty years might
not, as argued, be an insufficient consideration, so as to raise a
presumption that a sale might as well have been intended.
The statement of the witness Mele, made inadvertently, seems
to indicate that some yearly payment was mentioned.  The
trade seems to have been kept secret from Ainini's relatives,
who would naturally have been consulted, or at least been
informed of any proceedings which were fair and above board.
But the complainant placed confidence in the respondent, and
considering this fact, and her age and infirmities, the Court
will scrutinize this alleged sale with jealous eye.  *Jenkins vs.
Pye,* 12 Peters, 253.  The burden of proof is on the respondent
in a case like this, to show that the bargain was fair and just,
and that confidence was not betrayed.  *Huguenin vs. Basely,* 14
Ves., 271; *Chesterfield vs. Janssen,* 2 Ves., 156.

Especial haste appears in the deed being acknowledged before
the Register, at his private residence, immediately after it was
executed.  There seems to have been an immediate denial by

the complainant that she had sold her land, as soon as those acting in her behalf, or their own, had learned that a deed of sale had been recorded.

I am of opinion that this deed was made improvidently—being undue advantage taken of a position of trust to drive an unfair bargain with this aged woman, or else that the deed was fraudulently obtained. In either case, it is void.

I had, at first, some doubt whether the deed should not be reformed into a lease, but if a part of the inducement for the lease was that the respondent should support the complainant, it would be a hardship to remit her to his tender mercies. I regard the whole transaction as an imposition on the complainant, and not as a case of mutual mistake or *paris delicti.*

I accordingly decree that the deed be declared void, and that the respondent deliver up and re-convey the premises to the complainant.

Notice given of exceptions, and appeal to the full Court.

*A. F. Judd* for complainant.

*R. G. Davis & R. H. Stanley* for respondent.

June 30, 1869.