## THOMAS CHRISTLEY *v.* J. A. MAGOON and EMMELINE M. MAGOON.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED DECEMBER 26, 1900.          DECIDED MAY 21, 1901.

FREAR, C.J., GALBRAITH J., AND CIRCUIT JUDGE EDINGS, IN PLACE OF PERRY, J., DISQUALIFIED.

Deed held to have been procured through undue influence—as shown by the existence of the confidential relationships of attorney and client and principal and agent between the parties, the mental weaknesses of the plaintiff and the inadequacy of the consideration.

Acts held not to show acquiescense or ratification when done while the influence of the defendants over the plaintiff continued though after the termination of the relationships of attorney and client and principal and agent.

Failure of the grantor to tender to the grantee before suit what the grantee had paid to or on account of the grantor under the agreement, cannot be relied on when the question was not raised in the lower court and when the grantor alleged in his bill that he had requested an accounting which had been refused, had prayed for an accounting and the grantee had received rents and profits and it did not appear how much the grantee had paid for or on account of the grantor, and the grantor had offered at the hearing in the lower court to pay whatever the grantee had paid on his account.

Under the circumstances the grantee under a deed obtained through undue influence is declared to be a trustee for the grantor and ordered to convey the property to him subject to leases made after the execution of the deed.

### OPINION OF THE COURT BY FREAR, C.J.

This is a suit to cancel a deed, dated November 2, 1898, from the plaintiff to the defendant Emmeline M. Magoon, of 2.47 acres of land on the easterly side of Fort street between School and Vineyard streets in Honolulu. The consideration named in the deed is $10,000 but the real consideration was an oral promise to pay the plaintiff's debts amounting to about $4,000 and a written promise of both defendants to pay him $75 a month for the remainder of his life. The debts were in fact paid though a large portion of them not until after the commencement of this suit.

The grounds relied upon are fraud and mistake. In our opinion the decree appealed from granting the relief prayed for should subject to the modification hereinafter mentioned be affirmed on the ground that assuming that the defendants intended to act fairly and justly towards the plaintiff in the transaction and thought they did so, yet considering their relations to him and influence over him, his weaknesses, and the nature and amount of the consideration, the transaction was one that equity cannot uphold. It will not be necessary to review at length the voluminous testimony and lengthy briefs, all of which we have carefully examined.

For two years immediately preceding the execution of the deed and at the date of the deed the defendant J. A. Magoon had been and was the plaintiff's agent in respect of the property in question. He collected rents, prepared tax returns, paid taxes, kept accounts and from time to time rendered statements thereof. He also advised him as to special matters of business as they arose in connection with this property, such as the erection of buildings, the sale of personal property, and advanced him some money. During this period the said defendant, who was an attorney at law, also acted for or advised the plaintiff professionally on various occasions, as with reference to a claim arising out of the construction of a building upon this land, an assault and battery on the plaintiff, the obstruction of a right of way claimed to be appurtenant to this land, the possibility of the plaintiff's obtaining a divorce from his wife, and drafting deeds and leases. Just in what capacity he intended to act is not altogether clear in every case—whether as agent, attorney at law or as a friend. During this period he was the only one employed as agent or attorney by the plaintiff. At the time of the transaction in question he was acting as plaintiff's agent in relation to this property and had just advised and assisted him as to publishing notices that he, the plaintiff, would not be responsible for debts contracted by his wife and offering his personal property for sale and his real property for lease and was acting as his attorney in drafting a lease of a portion of the property and he acted as his attorney in drafting the deed in question. He and his wife, the defendant Emmeline M. Magoon, occasionally visited the plaintiff at his home after office hours as was their wont with respect to a number of Mr. Magoon's clients and took much interest in the plaintiff and performed various acts of kindness towards him. Mr. Magoon is an attorney at law and agent or trustee of much experience in land transactions.

The plaintiff is a Welshman some sixty years of age. He is a carpenter by trade and a good workman at that. He also carried on a small dairy and poultry business on the land in question, where his home was, and seemed to do pretty well at that.

But he had had little education and is somewhat deficient in his knowledge of English though he reads newspapers and books to some extent. His mind works slowly. He is somewhat dull and simple. He is forgetful. He not infrequently stops suddenly in conversation before finishing what he has to say and forgets what he was talking about or begins to talk on some disconnected subject. He has little confidence in himself in business matters and is very trustful of others, and has for many years entrusted the management of his property to others. He has little idea of values and is no match for a business man. He had had a hard time for some years prior to selling his property. He worked in connection with his trade and his dairy business often from two or three o'clock in the morning until late at night. He suffered from sleeplessness and rheumatism. He was worried over his business and over his property and the demands of his tenants for repairs. He experienced much domestic trouble after his marriage in 1893 and occasionally in temporary fits of excitement or despondency greatly abused his wife, for which he would appear penitent afterwards. Finally his wife with their young children left him in July, 1898. All these troubles greatly discouraged him and made him very irritable at times. The property in question had been purchased by the plaintiff with his earnings in lots from time to time and was his all. Part of it he used as his home and for dairy purposes and other parts he leased to various tenants.

The transaction in question came about in this way. The plaintiff was worried and despondent over his dairy, his property and tenants and his wife's desertion and was suffering from rheumatism. He had just inserted notices in the papers offering his cows and chickens for sale and his land for lease. One Wright had at once applied for a lease of a portion of the land and to purchase some of the cows and chickens. He and Magoon and Christley were negotiating in regard to these matters. On the evening of October 31, 1898, the defendants paid one of their visits to the plaintiff about sundown and after some talk over the plaintiff's troubles, and the advisability of his ceasing

work and taking life easier, an agreement was entered into. The parties differ as to who introduced the subject of selling the property and as to the degree of willingness or urgency manifested by them respectively in regard to the matter and also as to their understanding respectively as to just what the nature of the agreement was. The plaintiff contends that the agreement was to make a deed in trust for his, the plaintiff's, children and to pay the plaintiff $75 a month during his natural life out of the rents. The defendants testify in substance that the plaintiff said he had thought of asking some rich man to take the place, that he thought of asking James Campbell or Cecil Brown, they to give him so much a month, that he had not thought of asking him, Magoon, but that perhaps he would like to take it; that he, Magoon, said he was willing, but that perhaps it would be better to give it to Mrs. Magoon, as she had more real estate and he, Mr. Magoon, was in business and might go into something and lose his property; that Magoon asked him how much he would want, that he said he did not know how much he would require, that Magoon asked him if $75 a month would be enough, that he said it was more than he would require, that Magoon said that he ought not to have any less, and asked him about drawing the deed and he said he would like to have him, Magoon, draw it. There is some uncertainty as to just what, if anything, was said at that time in regard to paying plaintiff's debts, also as to whether the word "sell" or its equivalent was used or merely such words as "take," "give," &c. On November 2 the deed was drawn, executed and acknowledged. The consideration named was $10,000, which Magoon told plaintiff was a mere matter of form. A receipt for $6,000 was signed and acknowledged by the plaintiff and a joint and several promise was signed and acknowledged by the defendants to pay to the plaintiff, in consideration of $6,000, the sum of $75 a month so long as the plaintiff should live. The plaintiff in pursuance of arrangements made on the evening of October 31, moved to the defendants' home, where he continued to live for several months or until near the time when these proceedings were commenced. His

wife then returned and he and she became reconciled once more.

Much attention has been paid by counsel to the question of the adequacy of the consideration. Various points were discussed, such as the value of the monthly sum payable to the plaintiff and the value of his wife's unreleased dower interest, as determined by mortality and annuity tables and by the judgment of business men, the value of the plaintiff's land subject to the inchoate dower right viewed from the standpoint of an investor and that of a speculator, the extent of depreciation caused by the dower right, its effect on purchasers and upon lenders of money, the value of the property at the time of the transaction in question and at the time of the trial, its value based on the income which it yielded at the time and that which it could be made to yield and that which it was shortly afterwards made to yield, &c., &c. As matter of fact the property consisted of 2.47 acres of land in fee simple in a residence portion of the city where there was great demand for small cottages. Those portions of it which were then leased yielded in rents $113 a month. An arrangement had just been practically made to lease another portion for $50 a month, but shortly afterwards the proposed tenant concluded to give up the lease or declined to take it. In January following, a portion was leased at $50 a month and in February another portion at $50 a month for the first ten years, $75 for the second ten years and $100 for the third ten years. Thus within about four months the income was increased to $213 a month, with the prospect of further substantial increases in the future. A number of witnesses acquainted with this property and familiar with values here were examined as to its value, and from these it may be gathered that $25,000 is a conservative estimate of its value at the date of the deed and free of dower right. Much stress is laid on the outstanding dower right and the extent to which it would affect the value of the property in the opinions of business men, whether for the purposes of sale or mortgage security. The plaintiff was about 60 years old and his wife about 30. Looking at the question from the plaintiff's standpoint, so long as he held the property he did so just as any

other married man who held property in fee simple would hold it. He could manage and lease it and enjoy it and would not regard his wife's inchoate right of dower as depreciating the value of the property to him as any other man would who might own it subject to such right, and by retaining the property himself he would not only enjoy the income during his life but would have the property itself to dispose of by will subject to the dower right. Looking at the transaction from the defendants' standpoint, they had only to pay $4,000 of the plaintiff's debts and then out of the income of the property itself pay $75 a month during the plaintiff's life, retaining the rest of the income themselves, during which period plaintiff's wife would have no rights whatever in the property, and after the plaintiff's death they would have the property without the obligation to pay the $75 a month though subject to the wife's right to one-third of the income until her death, after which they would own the property free from all such rights or obligations. The defendants had no need of using the land for the purposes of mortgage security and certainly did not have to secure a loan on the property for the purchase price, for, except as to the $4,000 debts, they were to pay no money except the monthly allowance which they could pay out of the rents of the property itself. If the value of the land is so little when subject to an inchoate right of dower, as defendants counsel contend, looking at the value from the standpoint of conservative business men, what was the value of the consideration consisting as it did of an oral promise or understanding to assume $4,000 of debts and a mere unsecured though written promise to pay $75 a month for the plaintiff's life? In this transaction the defendants had everything to gain and nothing to lose. After paying the $4,000, the interest on which at 7 % would be only $280 a year, they could much more than pay the monthly sum of $75 out of the income from the property itself and might be able to purchase at any time for a comparatively small consideration the wife's inchoate right of dower, and upon the plaintiff's death they would be released from the payment of $75 a month and on his wife's death

from her dower right. Without going into detailed calculation as to the value of the dower right or the annuity or an extensive discussion of all the suggestions made as to the method of determining the value of the property, it is obvious that well located income producing city real property worth $25,000 when free of all incumbrances, is, when subject to only a dower or one-third interest from the grantor's death to the death of his wife, worth more than $4,000 plus an unsecured promise of $75 a month for the grantor's life, even though the promisors were worth, as in this case, $200,000 or more at the time. That speculators or money lenders would for their purposes throw off 40% in fee as the depreciation due to the inchoate $33\frac{1}{3}$% life interest, or that an annuity of $75 a month payable by a responsible insurance company for the expected life of the grantor is worth nearly $10,000, does not alter the result.

The plaintiff did not have independent advice, nor was it suggested to him that he take such advice. No suggestion was made that better terms might be obtained. The deed contained a covenant of warranty except as against the dower right although there was an outstanding mortgage on it, the debt secured by which was part of the $4,000. The deed contained no provision for the assumption of the mortgage debt by the grantees, nor was it made conditional upon the payment of the $75 a month. There was no written promise whatever for the payment of the debts and no security given for the payment of the annuity. The debts were in fact not all paid for several months. The defendant Mr. Magoon was acting for both parties. He suggested the terms of the agreement and the method of carrying it out and the plaintiff apparently submitted to everything he proposed without question. Mr. Magoon testified that he did not suppose that $5,000 more or less would have been a consideration to the plaintiff but that all he wanted was a certain amount monthly. Mrs. Magoon testified that she thought that the plaintiff would have taken $50 a month if that only had been offered.

We need not go into the question as to whether the plaintiff, as he now claims, thought he was signing a deed in trust for his

children subject to the payment of $75 a month to him for life out of the rents. There is certainly much evidence that it is difficult to reconcile with that theory, as well as some in support of it. We may even assume that the defendants thought they were being magnanimous toward the plaintiff, at least to the extent of thinking that the new arrangement was better for him, considering all his troubles, than the old. But in view of the then existing relationship of principal and agent with reference to this property, the relationship of attorney and client, the plaintiff's weaknesses and his trust in the defendants, the defendants' interest in the transaction, and the inadequacy of the consideration, equity must on well established principles undo the transaction. The presumption from such relationships is against the defendants. It is for them to show adequacy of consideration and that the parties were dealing with each other at arm's length or that they advised and acted with reference to the plaintiff's interests as if the latter had been dealing with a third party. The plaintiff while he may have understood that that was done which was done, apparently did not fully realize what it all meant. He trusted to the defendants to do what was best for him. The presumption of undue influence arises from the existence of the fiduciary or confidential relationship. Such relationship in this connection has a broad meaning. It includes the relationship of attorney and client and even that of principal and agent. The presumption is based on grounds of public policy and upon the principle that one may not serve himself, while serving another, so as to work injury to that other. The presumption is stronger where the relationship exists in respect of the property in question, where the party claiming to be injuriously affected is mentally inferior to the other, and where the consideration paid is not clearly adequate. This presumption arises in the present case and has not been overcome.

The defendants further rely on ratification or acquiescence, on the ground that, if the plaintiff did not realize what was done at the time, he did afterwards and yet continued to accept for several months the payments of $75 a month and to recognize the

transaction in other ways. A complete answer to this is that the influence which the defendants exercised over the plaintiff and the confidence he reposed in them continued during this period. He was, as already noted, living with the defendants in their home. He does not appear to have acted with any intent to recognize the validity of the transaction after he was removed from such influence.

The defendants further rely on the plaintiff's failure to tender to the defendants what they had paid out under the agreement, on account of debts or the annuity. The plaintiff in his bill alleges that he had requested the defendant, Mr. Magoon, for an account but that the latter had failed to render one, and he prays for an accounting. The defendants had been in possession and received the rents of the land and, for aught that the plaintiff knew, so far as appears, had received more than they paid out. The defendant, Mr. Magoon, testified that the mortgage debt, which was more than half of the $4,000 indebtedness was not paid until after the suit was commenced. At the hearing the plaintiff offered to pay all that the defendants had paid out under the agreement. Apparently no question as to tender was raised in the lower court. The court decreed not only that the deed was null and void and that it be set aside and cancelled and that the defendant, Mrs. Magoon, be a trustee for the plaintiff on the property in question and that the defendants execute a deed of the property to the plaintiff, and account to him for all moneys received by them therefrom and as his agent, but also made all these conditional upon his paying to them or into court all sums paid by them towards the $4,000 debts and $75 payments. Under these circumstances the defendants are amply protected and it would not be equitable to allow them to now rely upon failure to make a tender prior to bringing the suit.

Of course those who took leases of the property from Mrs. Magoon after she acquired title under the deed in question would not be affected by the decree in this case, for they are not parties. We presume also that they would not be affected even if they were parties for the reason that they took innocently. But it

may be that if the deed were set aside as null and void at the time of its execution, Christley would technically have a right of action against the Magoons for having made the leases, even though he might be able to recover only nominal damages, for apparently the leases were made on terms as favorable to the lessor as could be obtained. He who seeks equity must do equity. Christley was not altogether blameless. He was aware of the execution of the leases and while we do not go as far as to hold that his knowledge and failure to object operates as an estoppel against his setting up undue influence, because the undue influence continued, yet he may as a matter of equity be given relief only on condition that he place the defendants as far as possible in their former position. He has elected to come into equity rather than go to law. In our opinion it will be as much as he can fairly ask so far as the deed is concerned to have Mrs. Magoon declared a trustee for him and to convey the property to him subject to the leases and not to declare the deed null and void and order it cancelled.

The case is remanded to the Circuit Judge with directions to modify the decree in conformity with these views and for such further proceedings as may be proper.

*Hatch & Silliman* and *J. T. De Bolt* for plaintiff.

*Kinney, Ballou & McClanahan* for defendants.