CHUN CHEW PANG AND ESTELLE T. CHUN *v.* CHUN CHEW KEE, CHUN MEW YUN, CHUN CHEW FONG, CHUN AH UNG, CHUN AH BAY, CHUN CHEW NAM, CHUN CHEW HONG, CHUN CHEW QUON, CHUN CHEW WAH AND CHUN CHEW LEONG.

No. 4413.

FEBRUARY 17, 1966.

CASSIDY, ACTING C.J., WIRTZ AND LEWIS, JJ., AND CIRCUIT JUDGE OKINO ASSIGNED BY REASON OF VACANCY AND CIRCUIT JUDGE HAWKINS IN PLACE OF MIZUHA, J., DISQUALIFIED.

OPINION OF THE COURT BY WIRTZ, J.

This appeal was taken from the judgment entered in Civil No. 7840, First Circuit Court, on October 7, 1963, denying the prayer of plaintiffs-appellants to quiet the title in them to 20.6 acres of land situate at Lualualei Homesteads in Waianae, Oahu, Hawaii.

Plaintiffs are husband and wife. Plaintiffs Chun Chew Pang and the ten defendants-appellees are brothers and sisters and are the children of Chun Wood (deceased) and his wife Ting On Chang Chun. Plaintiff Pang is the eldest child in the family and defendant Kee is the next eldest.

By deed dated May 3, 1927, duly recorded in the Bureau of Conveyances at Honolulu, Earnest Elbert Ethbert conveyed the property in question to plaintiff Pang for a consideration of $5,500 which was furnished by his father, Chun Wood. Chun Wood raised the money for the purchase of this property through a loan obtained from Liberty Bank in Honolulu, and at his direction it was placed in the name of plaintiff Pang. Since Chun Wood was an alien he could not take title himself, this being homestead land. The chancellor found that Chun Wood "had title taken by Pang for the benefit of all Chun Wood's children" and Pang orally so agreed. The deed to the property was found after Chun Wood's death among the papers of his estate. Some nine months after the date of this deed Chun Wood had plaintiff Pang execute a promissory note for $5,500 on February 2, 1928, payable on demand but without provision for interest. No payment on the note was ever made or demanded. With but one exception all of the annual real property taxes for the property were paid either by Chun Wood during his lifetime or by defendant Kee as executor of his father's estate after the father's death. The father, Chun Wood, died testate on November 8, 1940, and by his will left all of his property equally to all of his children and to his widow. Defendant Kee qualified as the named executor on January 6, 1941.

On January 27, 1941, a little over two months after the death of his father, plaintiff Pang conveyed an undivided 10/11th interest in the property to the defendants,

his brothers and sisters as tenants in common, retaining a 1/11th interest for himself. His wife, plaintiff Estelle E. Chun, released her dower interest therein. The deed was signed in the office of the estate's attorney, first by plaintiff Pang and then later in the day by his wife. Plaintiffs admitted the execution of the deed and identified their signatures at the trial. They also admitted and exhibited in court their ability to read and write the English language. The signatures of the plaintiffs were duly notarized and acknowledged by a Notary Public of the First Circuit, Territory of Hawaii.

The January 27, 1941 deed lay dormant in the files of the attorney for the estate until the latter part of 1959 when in the process of clearing out and discarding old files it was discovered by the office secretary and forwarded to defendant Kee, together with the 1927 deed. The 1941 deed was later duly recorded in the Bureau of Conveyances on March 8, 1960. Meanwhile plaintiffs, in 1944, three years after this 1941 deed and seventeen years after the 1927 deed and four years after the father's death, moved onto the property. Later plaintiff Pang executed a deed dated June 5, 1957, purporting to convey the property to himself and his wife. This deed was duly recorded in the Bureau of Conveyances on June 6, 1957.

On April 24, 1961, plaintiffs brought this action against the defendants under a complaint entitled "Action to Quiet Title." The gravamen of this complaint was that the signatures of plaintiffs to the January 27, 1941 deed "were obtained as a result of false representations made by the Defendant CHUN CHEW KEE." Plaintiffs prayed that they be adjudged the sole, legal and equitable owners of the property.

Defendants filed their answer on February 16, 1962, denying that the signatures of the plaintiffs to the January 27, 1941 deed were obtained as a result of false repre-

sentations made by defendant Kee. The answer further alleged that in executing the deed of January 27, 1941, plaintiff Pang was simply complying with and fulfilling the oral agreement and understanding he had with his father, Chun Wood, at the time the Waianae property was purchased in 1927, namely, that the property belonged equally to all of the brothers and sisters.

While the plaintiffs maintained in their testimony throughout the trial that they had not read the January 27, 1941 deed and were unaware of its contents and signed at the behest of defendant Kee under the impression that it was a matter having to do with the estate and not with the property in question, defendant Kee in his testimony denied that he had ever requested the plaintiffs to execute the January 27, 1941 deed and was unaware of its existence until he received it through the mail from the office of the attorney of the estate in the latter part of 1959. Plaintiff Pang maintained throughout his testimony that his father, Chun Wood, had bought the property for him and that the purchase price advanced by the father was a personal loan to him. On the other hand defendants Chun Chew Kee, Chun Chew Hong (Robert), Chun Chew Wah (Bertram) and Chun Chew Nam all testified to statements corroborative of a family understanding that the property was purchased for and belonged to all of the children. Defendant Kee further testified that at the time of the purchase plaintiff Pang promised to hold the property for the benefit of all the children and that at the same time the father asked him "to sign a promissory note as a protection that you won't sell the property and run away with it." A demand promissory note was executed some nine months after the date of the deed. Defendant Kee also testified that plaintiff Pang on several occasions acknowledged that the property belonged to all the brothers and sisters. That was also the mother's

(Ting On Chang Chun) understanding as admitted by plaintiff Pang in testifying about a conversation held with his mother at a family meeting in the middle part of 1960. Defendant Chun Chew Hong (Robert) testified that plaintiff Pang had stated to him in a conversation in the early part of 1960 that as soon as the property was sold the money would be divided equally among the brothers and sisters. Defendant Kee similarly testified that plaintiff Pang came to him in 1948 about selling "our" property for $80,000 at which time defendant Kee felt that they could get a better price. Both defendants Kee and Chun Chew Wah (Bertram) testified that plaintiff Pang had made an offer in 1960 whereby he would retain three acres and the rest of the property was to be divided among the remaining brothers and sisters.

On the basis of this testimony the chancellor in his decision cast doubt on the credibility of plaintiffs' testimony and succinctly described the transaction in his findings of fact as follows:

"This is what appears to have happened. Chun Wood wanted the land for himself and his children. But the land was homestead land. Being an alien, he could not take title himself. So he had title taken by Pang for the benefit of all Chun Wood's children.[1] Pang was the eldest of Chun Wood's children. Later Pang married Estelle and gave Chun Wood grandchildren. So Pang and his family were allowed to live on the land. Chun Wood got the promissory note from Pang to be able (if necessary) to require Pang to allow all the children to benefit from the land. All went well during Chun Wood's life; so no payment was demanded on the note. Chun Wood died November 8, 1940. Knowing Chun Wood's wishes that all the children of Chun Wood benefit equally from the land, Pang and Estelle on January 27, 1941, signed

and acknowledged the 1941 deed (after reading it) and left it at the office of Mr. Fong, attorney for the executor of Chun Wood's estate, for all the Defendants. This was a delivery of the 1941 deed to the Defendants. Through oversight or neglect, the deed was for many years left in Mr. Fong's office and not recorded. Chun Chew Kee was a procrastinating and careless executor. In 1960 he received the deed through the mail and recorded it.

"It appears that Plaintiffs own an undivided 1/11th interest in the land and Defendants own an undivided 10/11th interest in the land.

"¹ Pang and Chun Wood orally so agreed."

In thus finding for the defendants the chancellor upheld the validity of the 1941 deed. In rejecting plaintiffs' claim and in arriving at this decision the chancellor of necessity had to pass upon the credibility of the witnesses. He found not only that the 1941 deed was signed, acknowledged and delivered but also that plaintiffs signed, acknowledged and delivered the deed to honor and fulfill the father, Chun Wood's wishes and the oral agreement between the father and plaintiff Pang rather than "as a result of false representations made by the defendant, Chun Chew Kee" as alleged in the complaint.

The sole question on appeal focuses on the chancellor's finding upholding the validity of the 1941 deed from the plaintiffs to the defendants conveying an undivided 10/11th interest in the Waianae property to defendants, the brothers and sisters of plaintiff Pang. Despite plaintiffs' efforts to divert attention from this sole issue on appeal, the eight specifications of error assigned[1] all

---

[1] "1. The trial judge erred in finding that 'Pang and Chun Wood orally agreed' at the time of purchase that Pang took title 'for the benefit of all Chun Wood's children.'

"2. The trial judge erred in finding that 'Chun Wood got the promissory note from Pang to be able (if necessary) to require Pang to

revolve around this central finding of the chancellor. Our attention must remain directed to the question of the claimed invalidity of the 1941 deed. It is only in this connection that the 1927 transaction plays a part.

At the outset it should be noted that plaintiffs in discussing the evidence from the standpoint of credibility in minute and detailed manner actually attempt to seek a trial de novo. They cite cases as to appellate review in equity matters decided prior to the adoption of the Hawaii Rules of Civil Procedure such as *Furtado* v. *Rezents*, 33 Haw. 569, 572 (1935). However, under H.R.C.P., Rule 52(a), the function of this court is simply to ascertain whether the chancellor's findings are "clearly erroneous." Unless this court is firmly convinced that a mistake has been made by the chancellor, his findings must stand. *Ikeoka* v. *Kong*, 47 Haw. 220, 386 P.2d 855; *Gonsalves* v. *Ikei*, 47 Haw. 145, 384 P.2d 300; *Filipino Fed. of America* v. *Cubico*, 46 Haw. 353, 380 P.2d 488; *Peine* v. *Murphy*,

allow all the children to benefit from the land.'

"3. The trial judge erred in finding that 'knowing Chun Wood's wishes that all the children of Chun Wood benefit equally from the land, Pang and Estelle on January 27, 1941 signed and acknowledged the 1941 deed (after reading it) and left it at the office of Mr. Fong, attorney for the executor of Chun Wood's estate, for all the defendants. This was a delivery of the 1941 deed to the defendants.'

"4. The trial judge erred in not giving due regard to Pang's testimony and to part of Chew Kee's and in not finding that Pang borrowed $5,500 from his father, Chun Wood, for which he executed a promissory note to pay him that specified amount at his father's request as evidence of the loan made to him and in not finding that such a money-loaned understanding was conclusively proven as a fact.

"5. The trial judge erred in not finding that Chew Kee as executor for his own advantage falsely represented to Pang as beneficiary of their father's estate that he wanted Pang and Estelle to go down to the office of the attorney representing the estate and sign a paper there prepared for them because it would settle the estate and that they accordingly did sign it in the belief that it was such a paper.

"6. The trial judge erred in not finding that the signing of the 1941 deed was fraudulently obtained by Chew Kee.

"7. The trial judge erred in not finding that the 1941 deed was neither acknowledged nor delivered.

"8. The trial judge erred in not finding that the appellees are barred by latches (sic) from claiming any rights under the purported purchase-money-resulting trust for their benefit."

46 Haw. 233, 377 P.2d 708; *Re Guardianship of Matsuoka,* 45 Haw. 83, 363 P.2d 964; *Mitchell* v. *Branch,* 45 Haw. 128, 363 P.2d 969; *Dzurik* v. *Tamura,* 44 Haw. 327, 359 P.2d 164; *Miller* v. *Loo,* 43 Haw. 76.

When findings are based on the chancellor's evaluation of conflicting oral testimony, as was the case here, appellate courts are most reluctant to set aside such findings and will do so only under the most unusual circumstances. When dealing with findings that are determinations of mixed questions of law and fact without conflict in the evidence the scope of review becomes more delicate. When, upon the application of correct principles of law, the record rationally forbids the findings made by the trial court even though we give to "those parts of the evidence which cannot come before us * * * every possible probative force they might have," such findings are "clearly erroneous." *Poka* v. *Holi,* 44 Haw. 582, 583, 358 P.2d 53; *Estate of Campbell,* 46 Haw. 475, 513-14, 382 P.2d 920; *cf., Yee* v. *Okamoto,* 45 Haw. 445, 452, 370 P.2d 463. However, a finding that "must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case" has been considered factual rather than legal. *Commissioner* v. *Duberstein,* 363 U.S. 278, 289. The question of delivery raised under the third specification of error comes within this category. On the basis of the *Duberstein* test this resolves itself into one of fact, as in *Hewahewa* v. *Lalakea,* 27 Haw. 544, the question of delivery, being one of intention, has been held to be a factual determination under the circumstances of each case. *Cf., Yee* v. *Okamoto, supra,* 45 Haw. 445, 452, 370 P.2d 463.

From the foregoing statement of the case established by the record it is seen that the only areas of disagreement occur in connection with the circumstances surrounding the execution of the 1941 deed and that of the 1927 deed.

In the final analysis these conflicts were resolved by the chancellor on the basis of the credibility of the testimony and we can find no valid reason to disturb these findings based as they were on the belief of the testimony of the four witnesses of the defendants and the disbelief of the testimony of plaintiffs.

The burden of proof to establish the allegations of the complaint that the signatures of plaintiffs to the 1941 deed were fraudulently procured rested on the plaintiffs throughout. The fact that defendants pleaded, in explanation and support of their denial of this charge of fraud, the trust agreement and understanding under the heading of an "affirmative defense" did not actually make it an "affirmative defense." It was in actuality a "negative defense" by which evidence was pleaded as an explanation of the denial of the allegation of fraud. An affirmative defense admits the allegations of the complaint but offers a defense thereto. 2 Moore, *Federal Practice*, § 8.19[1], at 1811 (2d ed. 1965). "It is a misnomer to speak of a defense that is in substance a denial as an affirmative defense." *Ibid*, § 8.27[2], at 1843. "The fact that a denial is erroneously termed an affirmative defense should not work to the prejudice of the pleader." *Ibid*, § 8.26, at 1832.

Plaintiffs contend that the fiduciary and confidential relations existing in this case between the brothers plaintiff Pang and defendant Kee gave rise to a presumption of fraud and shifted the burden to defendants to prove that the transaction was fair. It is clear from the record that no fiduciary relationship existed as to the Waianae property since the same was not a part of the father's estate of which defendant Kee was the executor. See, *Johnson* v. *Johnson*, 9 Utah 2d 40, 337 P.2d 420, 422. In support of the rule of confidential relations in Hawaii plaintiffs rely on *Ainini* v. *Kala*, 6 Haw. 16; *Kapea* v. *Moehonua*, 6 Haw. 49; *Christley* v. *Magoon*, 13 Haw. 402;

*Keanu* v. *Kamanoulu,* 20 Haw. 96; *Notley* v. *Notley,* 23
Haw. 724; *Meheula* v. *Hausten,* 29 Haw. 304; *Furtado* v.
*Rezents, supra,* 33 Haw. 569; *Teixeira* v. *Teixeira,* 37 Haw.
64; *Teixeira* v. *Teixeira,* 40 Haw. 631. This presumption
is equity's protection for "the helpless and ignorant
against their own improvident acts, to which they have
been induced by false representations from those in whom
they had reposed especial trust. Violations of trust, and
undue advantage taken of credulity and ignorance, furnish
the groundwork of a large number of cases in which equity
relieves." *Ainini* v. *Kala, supra,* 6 Haw. 16, 18. However,
that was hardly the situation here as plaintiff Pang was
the oldest son, being two years senior to his brother de-
fendant Kee; plaintiffs were both of sound mind and
could read and understand English; they signed the deed
voluntarily and separately without the presence of de-
fendants, or any of them; their signatures were notarized
and the notary certificate showed that they executed the
deed as their free act and deed, and plaintiff Pang was
at the time 40 years of age and an experienced and in-
dependent businessman. Under these circumstances no
confidential relationship existed between the brothers.
Consequently no presumption of fraud existed in this case
and it was incumbent upon plaintiffs to establish fraud
and the concomitant invalidity of the 1941 deed at the
trial at all times.

"A deed apparently valid upon its face carries with
it a presumption of validity." *McElroy* v. *Calhoun,* 177
Okla. 38, 57 P.2d 827, 828.

That the deed was signed by plaintiffs, first by Chun
Chew Pang and later by his wife Estelle T. Chun, is not
denied. Plaintiffs identified their respective signatures at
the trial and admitted signing the deed. Their signatures
were duly notarized. Although both plaintiffs could read
and understand English and had ample opportunity to

read the deed before signing it they denied having read it. They went to the attorney's office on their own unassisted and at different times to sign the deed. Under these circumstances the chancellor expressed his skepticism as follows:

"It is difficult to believe they did not read the deed before they signed it. It is difficult to believe they could sign the deed without first seeing enough of it to want to read it before signing it. It appears to the Court that they read the deed before they signed it."

Plaintiffs' defense to signing the deed was, as alleged, that their signatures were fraudulently obtained. Plaintiffs' attempts to overcome the chancellor's findings are based largely on inferences and conclusions drawn from speculation and conjecture resting on the credibility of plaintiffs as witnesses while attacking the credibility of defendant Kee's testimony through the use of isolated and unconnected excerpts thereof. It would be much more reasonable to speculate that if defendant Kee had fraudulently procured the signatures of plaintiffs he certainly would not have allowed the fruits of his fraud to lie fallow in the files of the attorney's office for over eighteen years and then only to receive it because the attorney's staff were cleaning out some of the old files.

Although plaintiffs admitted signing the deed and the notary public, Elenore Young Lum, duly notarized plaintiffs' signatures acknowledging that they did execute the deed on January 27, 1941, as appears from her certificate of acknowledgment, plaintiffs contend that this certificate of acknowledgment was false and the deed invalid for the reason that "there was no appearance before an attesting officer and no acknowledgment at all was made." Plaintiffs do not deny that they did sign the deed in the attorney's office nor that there was a "girl" present there in the office at the time. Under these circumstances there

is insufficient evidence of a positive character to rebut the presumption raised by the certificate of acknowledgment complete and regular on its face that the facts stated therein are true. *Clegg* v. *Eustace,* 40 Idaho 651, 237 Pac. 438; *Yusko* v. *Studt,* 37 N.D. 221, 163 N.W. 1066; 1 Am. Jur. 2d, *Acknowledgments,* § 101 (1962); 1 C.J.S., *Acknowledgments,* § 137 (1936). Further, even if the certificate had been false and the deed not properly acknowledged this would not affect the validity of the deed as between the parties to the deed. R.L.H. 1955, §§ 343-26, 343-34; *Meheula* v. *Pioneer Mill Co.,* 17 Haw. 56.

The chancellor found that the plaintiffs "signed and acknowledged the 1941 deed (after reading it) and left it at the office of Mr. Fong, attorney for the executor of Chun Wood's estate for all the Defendants." He also found that plaintiffs signed and acknowledged the deed because they were cognizant of "Chun Wood's wishes that all the children of Chun Wood benefit equally from the land." The chancellor then held that under the circumstances there "was a delivery of the 1941 deed to the Defendants." It is difficult to grasp plaintiffs' position in this connection as they seemingly deny that any delivery of the deed had been made while charging that defendant Kee obtained the deed by fraud. The delivery of the deed to the attorney for the executor of the estate of Chun Wood, the father, constituted delivery to all of the children. *Cf., Hewahewa* v. *Lalakea, supra,* 27 Haw. 544; 16 Am. Jur. 508. If, as charged by the plaintiffs, the delivery of the deed were tainted with fraud defendant Kee would have followed the transaction closely and would have picked up the deed for recording immediately after it was signed. Thus viewed, the conclusion that the whole transaction involving the 1941 deed was normal and aboveboard is irresistible. It is difficult, if not impossible, to see how there could have been any fraud in-

volved in the delivery of the deed.

In order to lay this alleged charge of fraud once and for all to rest, defendants countered with a trust having been created under the circumstances surrounding the execution of the 1927 deed. As seen above this was not an affirmative defense in the true sense of the word although couched in that language. Also the reasons hitherto given in conection with the execution of the 1941 deed negativing any existence of a confidential relationship between plaintiff Pang and defendant Kee are even more applicable to the 1927 situation. It was not incumbent upon defendants to impress a trust upon the title of plaintiff Pang under the 1927 deed. It must be remembered that this suit is an attempt by plaintiffs to reform the 1941 deed and cannot be considered as an attempt by defendants to reform the 1927 deed. The existence of a trust in favor of all of the children of Chun Wood merely corroborates the lack of fraud in connection with the execution, acknowledgment and delivery of the 1941 deed. The finding that Pang orally agreed to hold the title for "the benefit of all Chun Wood's children" was not "clearly erroneous." Insofar as the statute of frauds might have been invoked in an action by defendants to establish the trust, it was waived by the execution of the 1941 deed by plaintiffs.

Plaintiffs did nothing about the property until four years after the father's death in 1944. Defendant Kee as executor of the father's estate made payments for the taxes and other improvements after his father's death. It is true that plaintiff Pang borrowed $4,000 from one of the other members of the family and had at the time of suit repaid all but $1,000, the money so borrowed being used for the purpose of improving the property and the yield therefrom during the time plaintiffs lived thereon and to pay other personal obligations of plaintiffs. There

was nothing inconsistent with plaintiffs living on the property as such was not incompatible with their co-tenancy. In 1945 or 1946 defendant Kee also moved on the property and lived there for a time. Plaintiffs were impecunious and were not in any position prior to the death of the father (as well as after his death up to the time they received some money from the estate by way of distribution) to make any kind of payment on the promissory note or for the taxes and improvements (except for one payment for real property taxes). The note was never intended as a strict legal obligation but more as good faith evidence of the underlying agreement and understanding. It was executed nine months after the 1927 deed was delivered and did not provide for the payment of interest although the father himself paid interest on his bank loan for the purchase price of the property. No payment on the note was or could be made by plaintiffs nor was any payment ever requested or expected.

According to the testimony of those members of the family who took the witness stand the whole family understood that the property belonged to the children equally. Plaintiff Pang himself must have had this same understanding as he consulted with defendant Kee about a prospective sale of the property and later sought a voluntary partition of the property. The father left all of his estate equally to all of his children in his will which is consistent with the understanding of the family that this Waianae property was also to be divided equally among the children. The action of the plaintiffs in executing, acknowledging and delivering the 1941 deed to the attorney for the executor simply confirmed this trust understanding and oral agreement.

Plaintiffs' whole case seems to rest on the promissory note which the chancellor found to be security to the father that plaintiff Pang would carry out the family

understanding when he stated in his decision "Chun Wood got the promissory note from Pang to be able (if necessary) to require Pang to allow all the children to benefit from the land." Under all the circumstances and the evidence presented before the trial court, as above outlined, we cannot now say that such finding of the chancellor was "clearly erroneous." The existence of this understanding more than obviated any charge of fraud of defendant Kee or any of the defendants in connection with the execution, acknowledgment and delivery of the 1941 deed.

The plaintiffs' final contention that defendants are barred by laches is misdirected. It might perhaps have had some validity if defendants had filed a suit seeking to set aside the 1927 deed or to reform the same impressing a trust on the title of plaintiff Pang. But again, that is not the situation here. It was the plaintiffs who filed a suit in 1961 to set aside the 1941 deed that they had executed, acknowledged and delivered shortly after the father's death in November 1940. It should be clear that the issue in this case is directed not to the 1927 transaction but to the question of the claimed invalidity of the 1941 deed. The understanding existing in 1927 as to that deed was utilized solely as a defense to the charges of fraud brought by plaintiffs against defendants in connection with the 1941 deed. The doctrine of laches is available only as a bar to affirmative relief and cannot be urged in bar of a right asserted by defendant by way of defense. *Code* v. *Seattle Theatre Corp.,* 162 Wash. 379, 386, 298 Pac. 432. There the court stated that the doctrine of laches is a "defense, and can only be asserted as a shield; it can never be used as a weapon of offense."

We can only conclude that the findings of the chancellor are amply supported by the evidence or as stated in *Mitchell* v. *Branch, supra,* 45 Haw. 128, 140, 363 P.2d

969, 977, "there is a surplus of substantial and compelling evidence to support [the chancellor's] findings of fact in this case."

The judgment is affirmed.

*Louis Le Baron* (*M. Lono Heen* with him on the briefs) for plaintiffs-appellants.

*Eichi Oki* (*James M. Morita* and *Vincent H. Yano* with him on the briefs) for defendants-appellees.