## FRANK NOYES v. CITY OF FERGUS FALLS.[1]

June 5, 1931.

No. 28,434.

W. P. Berghuis, City Attorney, for appellant.
N. F. Field and Cyrus A. Field, for respondent.

[1]Reported in 237 N. W. 189.

STONE, J.

This action for an instalment of rent was tried without a jury. The decision was for plaintiff, and defendant appeals from the resulting judgment.

Defendant, a city of the fourth class, is sued as lessee under a written lease of August 27, 1928. The term was one year from September 1, the rental $410. This suit is to recover the first instalment, which, if the alleged lease ever became effective, accrued September 1, 1928. The one issue, whether the alleged lease ever became effective as a contract, was decided below adversely to defendant. The appeal presents only the question of the sufficiency of the evidence to sustain that conclusion.

The land was under consideration by the city council as an airport. Mr. Philip R. Monson, city attorney, anticipating that pending negotiations would ripen into a lease, prepared in duplicate the written document sued upon, August 27, 1928. At a meeting of the city council that evening, a resolution was adopted "instructing the mayor and city clerk to execute said lease as presented." Defendant's home rule charter, 1903, § 20, provides that "every ordinance or resolution of the council shall, before it takes effect, be presented to the mayor for approval; * * * if he disapprove it, he shall return it to the council with his objections." The resolution of August 27 was never reduced to writing independently of its record in the minutes. It was never presented to the mayor for his approval or disapproval. October 15 another and more formal resolution was presented to the council "that the proposed lease as submitted by Frank Noyes [plaintiff] for an airport for said city be and the same is hereby accepted." It instructed the mayor and city clerk to "execute" the lease. This resolution was immediately vetoed by the mayor. It was resubmitted to the council October 15 and rejected.

In the meantime, that is, from August 27 to October 15, Mr. Monson, as city attorney, had held the duplicate lease in his own possession, although on August 27 he had procured the signatures not only of plaintiff but also of mayor and city clerk. He testifies

that he did not let the duplicates "go out of my possession." September 6, that is within eight days at most from the time plaintiff signed the lease and left it with Mr. Monson, the latter advised him "that the city would not go through with the proposition * * * I told him that the matter or transaction had not been completed; no resolution had been passed, published." Plaintiff does not deny this early notice that the transaction would not be closed. He admits that as early as September 17 the council, and "before that time" the city attorney, had told him that "this deal was not going through." There is no evidence that the city ever took possession of the land. There is suggestion that it was used more or less as a landing field for a time, but the record does not warrant charging the city with legal responsibility for such use.

The ultimate question is not whether the lease was delivered, but whether, by delivery or otherwise, it ever went into effect as a contract. That is, did both parties, plaintiff and defendant, ever manifest their final assent to be bound? Actual delivery, while not always essential, is ordinarily conclusive evidence that the written agreement has gone into effect as a contract. 13 C. J. 307. There is abundant evidence of plaintiff's intention that the lease, signed by him, should become effective at once. But there is no proof of a similar attitude and manifestation of assent on the part of defendant. Mr. Monson, in charge of the matter for the city, also had custody of the document for both parties. His testimony negatives the idea that the city ever expressed assent to become bound. It is significant that neither duplicate was returned, i. e. delivered to plaintiff. It is controlling that there is no evidence that the mayor and city clerk, to whom the "execution" of the lease had been delegated by the incomplete resolution of August 27, ever took the final step necessary to put the document into effect as a contract. There was neither delivery of it to plaintiff nor anything else to manifest the final assent of defendant to be bound. There was such intentional nondelivery on its part as to show no contract. Sawyer v. Mut. L. Ins. Co. 166 Minn. 207, 207 N. W. 307.

The instruction in the resolution of August 27 to mayor and

clerk was to "execute said lease." That meant not only that these officers should sign the lease but also put it into effect. They never did so, and in the meantime the negotiations were ended by the council's rejection of the whole proposition October 15. Ordinarily execution as applied to a written contract includes delivery as well as signature. Cash v. Concordia F. Ins. Co. 111 Minn. 162, 126 N. W. 524. But at best and under any view, mayor and clerk were but defendant's agents to consummate the proposed lease. Before they did so their authority to act was revoked.

We conclude therefore that the record does not support the judgment for plaintiff and that it must be reversed.