THOMAS Y. K. YEE AND MARY N. Y. YEE *v.* JAMES YASATO OKAMOTO AND EVELYN YOSHIKO OKAMOTO, BISHOP NATIONAL BANK OF HAWAII AT HONOLULU, BANK OF HAWAII, LIBERTY BANK OF HONOLULU, AMERICAN SECURITY BANK AND CENTRAL PACIFIC BANK.

No. 4171.

MARCH 12, 1962.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

OPINION OF THE COURT BY MIZUHA, J.

Plaintiffs, Thomas Y. K. Yee and Mary N. Y. Yee, son and daughter-in-law of Yee Chun Shee, brought this action

in assumpsit seeking payments for rent allegedly in arrears up to November 30, 1956, under a written lease executed between the said Yee Chun Shee, lessor, and James Y. Okamoto and Evelyn Y. Okamoto, lessees-defendants. The lessor conveyed the premises involved in this lease to the plaintiffs by deed dated January 10, 1955. The lessees raised the defense of cancellation and surrender of the lease. After a jury-waived trial, the court found for the defendants and appeal to this court followed.

The lease in question was executed on May 1, 1948, and involved premises situated on the North corner of Fort and Kukui Streets in Honolulu, at which the defendants operated a business known as the "Oahu Furnished Rooms." The lease was for a term of 30 years, the rentals for the duration involved in this controversy being $1,100 per month.[1]

Sometime around June 1954, the lessees initiated negotiations for the cancellation and surrender of the lease. Defendant James Y. Okamoto testified, that upon approaching the lessor, who was elderly and spoke little English, he was directed to see a Mr. Sam Sunn, who spoke Chinese as did the lessor, and who, at least on previous occasions, had acted as her agent. By appointment, defendants went to the office of Sam Sunn on Octo-

---

[1]Among other provisions, the lease specified: (1) that the lessees will pay all taxes, assessments, charges, etc., to which the said premises or the lessor or the lessees may become liable during the term of the lease; (2) that the lessees will pay all utility charges incurred in the use and enjoyment of the premises; (3) that the lessees will, at their own expense, make repairs to the premises; (4) that the lessees will, at their own expense, keep the premises insured in the joint names of the lessor and the lessees; and (5) that the lessees have deposited $5,000 as security for faithful performance with the terms and covenants of the lease, and that in the event of surrender or abandonment of the premises without the lessor's written consent, or if the lessees are dispossessed therefrom, such sum is to belong to the lessor as part payment for the expense that the lessor may incur for regaining possession of the premises and redecorating, repairing and reletting the same, and that such sum shall not be considered as payment for rent due, or to become due, or in any manner releasing the lessees from any further liability to perform the covenants of the lease.

ber 25, 1954, where they met Sam Sunn and the lessor, Yee Chun Shee. For that occasion, Sam Sunn had in readiness an instrument entitled "Cancellation of Agreement of Lease,"[2] purporting to cancel the lease in question, and an instrument entitled "Bill of Sale," purporting to transfer from the defendants to the lessor all furniture, furnishings, equipment, linen and other personal property belonging to defendants and located on the leased premises, and to assign to the lessor all rents and accounts receivable theretofore assigned by defendants to Acme Collectors, Limited. Defendants signed both instruments in the presence of Sam Sunn and the lessor, and according to the testimony of defendant, James Y. Okamoto, were told by Sam Sunn that the lease was cancelled but that the lessor would sign later.

Defendants received a receipt signed by Yee Chun Shee, which stated: "Received from James Y. Okamoto, Seventeen Hundred and no/100 Dollars, being final payment *of rent to Sept. 30, 1954,* on leasehold. By cashier's check No. 18184 issued by Bishop National Bank, King-Smith Branch, dated Oct. 23, 1954." (The italicized words were inked in and the rest of the receipt typewritten.) Furthermore, the fire insurance policy covering the premises had been transferred to the sole name of the lessor, the names of the defendants being deleted therefrom effective as of October 4, 1954.[3] After defendants had left Sam Sunn's office, the lessor signed the "Cancellation of Agreement of Lease," and left the same with Sam Sunn.

---

[2]Among other things, the instrument purported to forfeit the $5,000 held as security by the lessor under the lease in question, and recited that the lessees agreed to warrant that all taxes, rates, assessments, etc., to which the premises or the lessees were liable were discharged in full.

[3]Undoubtedly, Mr. Sunn's testimony would have been of invaluable aid in this case. Unfortunately, as the record shows without elaboration, he passed away prior to the date of trial.

Plaintiff, Mary Yee, testified that she usually took care of lessor's property, and when lessor returned home that day and informed her that she had signed some kind of paper at Sam Sunn's office, she immediately telephoned Sam Sunn, and inquired as to the nature of the document that lessor had signed. When she was told that the lessor had signed a cancellation of the lease and that defendants were to pick up a copy of the same at 5:00 o'clock, she told Sam Sunn not to deliver the document. She then went immediately to Sam Sunn's office and picked up the original and the several copies of the signed "Cancellation of Agreement of Lease."

Defendant, James Y. Okamoto, further testified that he continued to collect rents from the tenants of the premises, and that this was done as a favor to the lessor at the request of Sam Sunn. Payments were made to plaintiff, Mary Yee, by defendant, James Y. Okamoto, personally or by one of his employees, until November 19, 1956. The nature of these payments was in dispute, plaintiffs claiming that they were rent but that there was a deficiency in the payment of the agreed rent of $1,100 per month.

In the course of the defendants' presentation of their case and during the direct examination of the defendant, James Y. Okamoto, the issue of the mutilation of the "Cancellation of Agreement of Lease" document came to a focus, and the plaintiff, Mary Yee, was called by defendants to explain how a portion of such document, being the space provided for the lessor's signature, had been cut out. The signing of the "Cancellation of Agreement of Lease" document having been established by Mary Yee's admission that she had herself cut out the signature of the lessor, the trial court rather abruptly dismissed the case with judgment and costs in favor of the defendants.

The trial court found as a matter of fact and concluded

as a matter of law that a cancellation had been effectuated. As a subsidiary matter, it also found Sam Sunn to have been the lessor's agent in this matter.

The plaintiffs mainly urge that the trial court erred in its finding and its conclusion that a cancellation had been effectuated. They base their argument on the allegation that there was no evidence that the instrument purporting to cancel the lease was ever delivered.

As a preliminary matter, there is some confusion as to the nature of a surrender of a lease; whether it is strictly a contractual relationship or one involving a conveyance. Proper analysis would seem to indicate that the confusion arises from the fact that a surrender of a lease embodies both characteristics, and is a composite of both a contract and a conveyance. 3A Thompson, *Real Property*, § 1342 at 614-15; compare 4 Tiffany, *Real Property*, § 960 at 15-17; and see also the various definitions in 40 Words and Phrases, *Surrender* at 875-77. For the purpose of the instant case, it is important to note that, whichever way it is defined, a surrender of a lease by means of a written document ordinarily requires delivery of the same for its valid execution. Compare 26 C.J.S., *Deeds*, §§ 40-49; 17 C.J.S., *Contracts*, § 64. See also *Victor* v. *Pili*, 26 Haw. 658. However, it is also to be noted that the foregoing statement is subject to certain qualifications. A manual or formal tradition is not indispensable to an effective delivery. *Kaneko* v. *Okuda*, 15 Cal. Rptr. 792; *Handley* v. *Guasco*, 165 Cal. App. 2d 703, 332 P.2d 354; *Kreling* v. *Walsh*, 77 Cal. App. 2d 821, 176 P.2d 965. Historically, the legal concept of delivery had its inception in the traditional practice of making a manual transfer of the instrument, which gave rise to the expression "delivery." That, however, has been largely superseded by the view that delivery is basically a question of intent, there being a sufficient delivery if an in-

tention appears that the instrument shall be legally operative. Thus, more precisely defined, delivery of a document is merely the intent of the parties to have it become legally operative at some definite point in time, however such intent may be indicated. Compare 1 Corbin, *Contracts,* § 32 at 91-93 and 4 Tiffany, *Real Property,* §§ 1033-34 at 199-200. See also *Noyes* v. *City of Fergus Falls,* 183 Minn. 496, 237 N.W. 189, 190; *Sawyer* v. *Mutual Life Ins. Co. of New York,* 166 Minn. 207, 207 N.W. 307, 308; *Kaneko* v. *Okuda, supra; Handley* v. *Guasco, supra; Kreling* v. *Walsh, supra.*

It is clear by the record that the trial court adjudicated the instant case upon the theory that written cancellation of leases became immediately executed at the moment the signatures of the parties were placed thereon, and thereby, precluded all considerations on the issue of delivery.

It is also apparent that the trial court, in disregarding the issue of delivery, rendered its decision without determining the intent of the parties as to precisely when the terms embodied in the "Cancellation of Agreement of Lease" instrument were to become operative. If we assume *arguendo* that the trial court did entertain the proposition that the parties in this case had in fact intended the document to have legal effect upon its being signed, it is difficult to understand why the trial court did not give the plaintiffs the opportunity to present rebuttal evidence in that respect. This, for the reason that a cancellation or surrender of a lease, when relied upon as a defense, is an affirmative defense, the burden of proof being upon the defendants who urge the same, to establish it by a preponderance of evidence. *Bastien* v. *Bronstine,* 104 Colo. 521, 92 P.2d 736; *In re Garland's Estate,* 173 Misc. 832, 19 N.Y.S.2d 411; *Auer* v. *Penn,* 99 Pa. 370, 44 Am. Rep. 114; *Motch's Adm'r* v. *Portner,* 237 Ky. 25, 34 S.W.2d 744. Moreover, the abrupt manner in which this case was

terminated—the case being concluded somewhat summarily upon the lessor's signature being proven and despite the defendants' counsel's expressed willingness to continue with his case—leads this court to this conclusion.

For the foregoing reasons, we believe the trial court erroneously equated the lessor's signature with execution without any deliberation on the issue of delivery. And since by such error the plaintiffs were not afforded adequate opportunity to present rebuttal evidence, proper and sufficient adjudication of the facts is lacking in this case.

The defendants forward the alternative argument that even if the written cancellation of the lease was not effective, there was an effective parol agreement to surrender, which was completely acted upon. The case of *Yuet* v. *Asiu*, 34 Haw. 1, is cited in support of the defendants' position. In that case, after ruling that an oral agreement to surrender a lease was sufficient to cancel the lease if acted upon by actual surrender and acceptance, this court reviewed the record and ruled that the trial judge was warranted in concluding that a verbal agreement had been made and that it had been sufficiently acted upon.[4] Without precluding the defendants from pursuing the issue further at a new trial, we find there was insufficient evidence because of the abrupt termination of the trial below

---

[4]In that case, this court said:

"Plaintiff denied that she had resumed possession of the demised premises following the removal therefrom of the defendant on August 31, 1934. But notwithstanding this denial we think there was other evidence adduced from which the trial judge was warranted in finding that the appellant agreed to the cancellation of the lease; that accordingly appellee removed from the property and surrendered the control and dominion thereof to appellant. There is evidence that she refused to grant appellee any extension of time within which to move his effects from the premises and that on the 31st day of August, according to Onishi, a disinterested witness, she said to appellee: 'You hemo [move away; depart] today.' It further appears that in order to comply with this demand appellee worked late into the night removing his effects from the demised premises. It further appears that the appellant

for this court to determine the applicability of *Yuet* v. *Asiu, supra.*

In view of the remand for a new trial, we deem it advisable to note that the evidence so far adduced does not support the finding that after the meeting at Mr. Sunn's office on October 25, 1954, defendants merely, as the trial court said, "continued to collect rent for the lessor as a favor * * *." It appears from the record that during the period between October 25, 1954, and November 30, 1956, the defendants accounted for the rents collected by them as income for federal income tax purposes; that they claimed as deductions charges for utility, insurance and repairs incurred on the premises; that they continued to pay the real property tax thereon; that they maintained a general excise tax license thereon; and that they paid general excise taxes on the rental income received therefrom. It further appears from the record that plaintiff Mary Yee gave defendant James Y. Okamoto various receipts marked "rent" or "a/c rental." According to this evidence, the payments in the first period covered by the exhibits, up to May 31, 1955, were in the exact amount of $1,100 per month. An examination of receipt stubs in evidence dated March 29, 1956, April 4, 1956, April 18, 1956, May 3, 1956, and May 28, 1956, reveals that on these occasions an attempt was made to arrive at a balance due, the stubs being signed or initialed by defendant James Y. Okamoto. On the evidence as it stands this finding that the defendants merely "continued to collect rent for the lessor as a favor * * *" is "clearly erroneous." H.R.C.P., Rule 52(a). We are "left with

---

resided adjacent to the demised property and from these, as well as other facts and circumstances testified to at the trial, we are unwilling to say that the circuit judge committed reversible error in concluding that the appellant and appellee mutually agreed to the cancellation of the lease and that in complying with the agreement appellee removed from the premises and the appellant resumed possession thereof." *Yuet* v. *Asiu,* 34 Haw. 1, 3-4.

a definite and firm conviction that a mistake has been committed by the trial court" with respect to this finding. See *Hawaii Builders Supply* v. *Kaneta*, 42 Haw. 111, 116. That does not signify that the defendants will not be able to sustain the point at a new trial.

The defendants urge that *Kreling* v. *Walsh, supra,* supports the proposition that delivery, under particular circumstances, is complete although the written instrument is left in the possession of one party. This court is also aware of *Holi* v. *Koakanu,* 5 Haw. 375, a case with facts somewhat similar to the instant case in which delivery was found sufficiently established. However, since we have concluded that complete adjudication of the facts of this case has not been made, final determination in that regard would be premature.

As a subsidiary matter, the appellants urge that the trial court also erred in finding as a matter of fact that Sam Sunn was the agent of the lessor, Yee Chun Shee. Inasmuch as we think this case should be reversed and remanded for a new trial, inquiry into this issue will not be pursued at this time.

Finally, although this court does not purport to conclude that the lessees in the instant case were either tenants at sufferance or tenants at will, should the adjudication upon remand establish the lease to have been cancelled, determination of such issue may be warranted in view of the fact that the plaintiffs contend that the defendants continued on the premises after the "Cancellation of Agreement of Lease" instrument had been signed.

Reversed and remanded for a new trial.

*Walter G. Chuck* and *Albert W. Evensen* for plaintiffs-appellants.

*Clarence Y. Shimamura* for defendants-appellees.