508 P.2d 1179

**ASPEN ACRES ASSOCIATION, a corporation, Plaintiff and Respondent,**

v.

**SEVEN ASSOCIATES, INC., a corporation, Defendant and Appellant.**

No. 12825.

Supreme Court of Utah.

April 16, 1973.

---

John G. Marshall, Salt Lake City, for defendant and appellant.

Frank J. Allen, Clyde, Mecham & Pratt, Salt Lake City, for plaintiff and respondent.

CALLISTER, Chief Justice:

Plaintiff, an association composed of some but not all of the persons owning lots in a subdivision in Summit County, initiated this action to determine the rights and duties of each of the parties concerning the roads and water system within the subdivision. Defendant, by conveyance, had succeeded to all the right, title, and interest of the corporate entity, Aspen Acres Incorporated, which had developed the subdivision, including the water system and any development in connection with the water system appurtenant to the real estate.

Aspen Acres Incorporated, the developer, acquired in Summit County a half section of land. Thereafter, in May, 1962, it filed a plat of a mountain home subdivision covering approximately 75 acres of the section. To reach the subdivision from the public highway it is necessary to cross a strip of land which was owned by the developer and to which defendant has succeeded in interest. The developer, in its conveyances to individual lot owners in the subdivision, guaranteed a right-of-way to and from the property. In addition, the developer agreed to share water from an unnamed spring and pipe to the tract. The developer, as seller, in the conveyances, reserved a right-of-way for construction and maintenance of water pipe and power transmission lines. The conveyances to the individual lot owners included the land to the center of the platted streets, subject to an easement for the use and benefit of any person who owned or might acquire property in that tract known as Aspen Acres.

In August, 1962, a meeting was held for the purpose of forming plaintiff, a nonprofit organization for the owners of property in Aspen Acres. The president of the developer of the subdivision, Max G. Bateman, was leaving the area and wished to turn the responsibilities of maintaining the roads and water system over to the association. In January, 1963, the developer and Max Bateman conveyed certain water rights and stock certificates to plaintiff; the conveyance provided:

These water rights and stock certificates are executed and delivered to Aspen Acres Association for the benefit of those persons and corporations now owning lots in Aspen Acres Incorporated Subdivision, and for the benefit of those who may hereafter own lands therein. Said water rights shall be distributed to said beneficiaries in accordance with the Articles of Association of the grantee.

Defendant was incorporated by seven lot owners in Aspen Acres in March, 1963, for the purpose of acquiring the developer's remaining interest in the half section. On March 27, 1963, defendant by real estate contract acquired 18 lots in the subdivision

and the lands remaining undeveloped in the half section. The developer agreed to sell defendant the water system; defendant assumed the responsibility of running water lines to fifteen lots, which were specifically identified. The contract then provided that the liabilities to be incurred by the buyer were to be limited to the specified lots.

Both parties have expended money for the maintenance of the roads and water system. The conflicts which precipitated this action centered on who was responsible for the maintenance of the roads and water system and the financing therefor, the right of defendant to extend the water system and make additional attachments as it further developed the section, and the right of plaintiff to erect locked gates to control access to the subdivision and to curtail the use by defendant of the roads within the subdivision.

The trial court predicated its decision on the concept that the developer had a continuing duty to maintain the roads and water lines, although there is no specific contractual or statutory provision cited to sustain this position. The trial court then reasoned that since the president of the developer encouraged and participated in the formation of plaintiff, the developer had delegated certain rights and duties to plaintiff. Subsequently, when defendant acquired all of developer's right, title, and interest in the property, the trial court concluded that defendant was liable for all of the developer's duties; but, since these duties had been delegated to plaintiff, plaintiff was the agent of defendant.

The trial court ruled that in regard to the roadway which crosses defendant's property from the highway to the subdivision that plaintiff was trustee for all of the lot owners in the $\frac{1}{2}$ section and had the following rights: (1) to enter for maintenance, improvement and protection of the road, (2) to make reasonable regulations and to restrict access to the owners of the land and their invitees within the tract, (3) to erect and maintain access control devices, (4) to maintain actions for contributions for costs of maintenance against any and all persons having a legal obligation to make such contribution. Plaintiff was held to have a correlative duty to maintain the roadway in reasonable repair. Plaintiff was further determined to have the right to maintain and to improve the road system within the subdivided areas of the tract and to maintain suits for contribution for maintenance costs.

On appeal, defendant urges that the trial court erred in granting plaintiff the right to control, including access, the easements within and without the subdivision. Defendant cites as further error the denial of affirmative relief, declaring that defendant has an easement across the roads within the subdivision for access to its lands.

■ Initially, the developer owned the entire ½ section. Each conveyance made thereafter provided:

"Subject to an easement along the above described right of way for the use and benefit of any person now owning or who may acquire property in the tract known as "Aspen Acres.""

The legal effect of this provision was to reserve to the grantor (the developer) and his assigns an easement appurtenant over the lands of the grantee.[1] With each subsequent conveyance by the developer, the easement reserved by prior conveyances as an appurtenance to the lands of the grantor passed to the grantee. Since defendant has succeeded to the interest of the developer, it has an easement over the roads within the subdivision.

In Rollo v. Nelson[2] this court stated:

Servitudes, adopted by the owner of land, which are plainly visible or notorious, and from the character of which it may fairly be presumed that he intended their preservation as necessary to the convenient enjoyment of his property, become, when the lands are divided and pass into other hands, permanent appurtenances thereto, and the owner of either the dominant or servient portions of the land has power adversely to inter-fere with their proper use and enjoyment.

■ We therefore, conclude that each owner of a lot within the ½ section has an easement appurtenant to his land over the roads within the entire ½ section referred to by the developer as the "Aspen Acre Tract."

May the rights conferred upon plaintiff by the trial court to control the roads be sustained?

In Stanley Heights Property Owners Assoc., Inc. v. Whiteside[3] a similar issue was raised. The individual lot owners in a mountain subdivision received in their conveyances a right of way over the roads in the subdivision, with a right of ingress and egress. Thereafter, the grantor conveyed to the property owners association the road and roadways platted in the subdivision, subject to the existing easements. The owners association thereafter commenced construction of cattle guards over roadways leading into the subdivision. The trial court held that the Association took nothing under the deed and was a stranger seeking to obstruct the roads of the subdivision and thus should be enjoined from building cattle guards. The Supreme

1. Johnson v. Peck, 90 Utah 544, 549, 63 P. 2d 251 (1937).

2. Rollo v. Nelson, 34 Utah 116, 124, 96 P. 263, 265 (1908).

3. 151 Colo. 429, 378 P.2d 399, 401 (1963).

Court of Colorado affirmed the judgment, stating:

> If these passageways were conveyed to the owners of the lots for their accommodation in gaining ingress or egress to and from their properties, either for themselves or such as they may expressly or impliedly invite upon their premises, the grant established private ways. [Citation] The fact that the roads and roadways in question were not built for the convenience of the Association leaves the Association without any interest as to who uses them. At best, the Association is a mere volunteer in its attempt to interfere with the use of the roads and roadways in Stanley Heights. [Citation]

■ In the instant case, plaintiff owns no real property within the tract and, therefore, has no right to interfere or control the easements appurtenant to the realty therein. Furthermore, the membership in plaintiff is composed of only a portion of the lot owners in the tract; these members may not interfere, restrict, or control the easement they enjoy in common with the nonmembers.[4]

■ The trial court further committed error in its determintion that plaintiff had a duty to maintain the roads and a right to maintain an action against the owners for their share of the costs of maintenance. Except for defendant, there were no individual owners of these easements before the court.

In Bernard v. Gaumer,[5] the court stated:

> . . . The subject of the road upkeep and maintenance on its face concerns parties who filed no pleadings in the litigation and, being indivisible because of possible equitable distribution of the responsibility among the respective owners of the dominant and servient tenements, could not be litigated in the cases under review.

> Besides proof should be required of the extent of use by the several tenements in order to afford the trial court bases for assessing upkeep against them. Absent any agreement on the question of maintenance of a private way, the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as such may be ascertained. [Citations]

In the instant action, there is a difficult problem presented, but it may not be resolved by granting the powers and functions of a municipal corporation to a private association composed of some of the lot owners in the tract.

4. Big Cottonwood Tanner Ditch Co. v. Moyle, 109 Utah 213, 239, 174 P.2d 148 (1946).

5. 146 Colo. 409, 361 P.2d 778, 781 (1961).

In plaintiff's pleadings, it made demand on defendant to convey easements for the installation, maintenance, and repair of the water system as well as appurtenant easements as might be appropriate for the maintenance of the water system. Plaintiff proceeded on the theory that the developer, at the time plaintiff was organized, had made certain oral representations to convey certain interests in the water system in return for plaintiff's undertaking the maintenance thereof. In response thereto, defendant pleaded the statute of frauds and statute of limitations. The day prior to trial, plaintiff located a document in its files of which it represented it had no previous knowledge, and plaintiff changed its theory. The document which is hereinafter identified as exhibit 15 is dated May 22, 1963, and is allegedly a contract between plaintiff and defendant. The document provides:

> At such time as Associates acquires title to the water rights and water system including tanks and equipment and rights-of-way pertaining thereto, that it will transfer said rights, systems, tanks, equipment and rights-of-way to the Association, which Association then agrees to assume full responsibility in connection with the maintenance, development and operation of such water system.

The document was signed Aspen Acres Association by Kenneth L. Stahr and Seven Associates by Walter R. Farmer. The trial court found exhibit 15 a binding contract and ordered defendant to convey to plaintiff, as trustee for the lot owners within the subdivided areas of the tract, the water system. The trial court declared plaintiff was the owner of the water system, including all storage tanks, conduits, and other personal property utilized for transmission of water from the sources under plaintiff's water rights to the lots within the subdivision as the same were installed and existing as of May, 1962, together with such additions and improvements incorporated into the system since that date. Plaintiff was further granted easements over the tract for all purposes related to maintenance of the water system. The trial court declared that plaintiff might shut off the water to any lot whose owner failed to pay membership dues and assessments for plaintiff's costs in carrying on its corporate business. Defendant was restrained from making any attachment to or modifying the water system except under any terms of an agreement with plaintiff, provided that this restraint should not be construed to impede in any way defendant's access to the source of any water to which it had or might establish a right.

■ Defendant contends that the trial court erred in its finding that exhibit 15 was a binding contract and in ordering the conveyance of the water system to plaintiff.

The uncontroverted facts adduced at trial establish that exhibit 15 never became a binding contract and that it was never authorized by defendant's board of directors.

Mr. Stahr, who signed in behalf of plaintiff, was, on the date of the alleged execution, an executive officer of both corporations. He testified that the agreement was never approved by defendant, that it was signed by Mr. Farmer without any authorization of defendant, and that the agreement was never delivered to him as a representative of plaintiff. Mr. Farmer testified that at the time he affixed his signature to the document, he was treasurer and a director of defendant, but at the time of trial, he had no interest in defendant. Mr. Farmer testified that he had signed the document in an attorney's office but that defendant's board of directors declined to accept the agreement and had not authorized the delivery of the document to plaintiff. Mr. Farmer explained that following a meeting at a cabin at Aspen Acres, he had placed a portfolio containing exhibit 15 and other documents on the back of his automobile and had driven away. The portfolio was lost and never subsequently recovered by him. Significantly, plaintiff never proffered any explanation as to the manner by which it gained possession of the document. The minutes of defendant's board of directors were admitted into evidence, and there was no entry indicating that exhibit 15 had been authorized or approved. Furthermore, the conduct of plaintiff subsequent to the alleged date of execution was inconsistent with its claim that it had a valid and binding contract to acquire the water system.

■ There are two aspects which negate the trial court's finding that exhibit 15 was a binding contract. First, to prove that the contract was binding on the corporate defendant, it should be shown that it was made on its behalf by someone who had authority to act for it. This authorization may be proved by showing that the officer was expressly authorized, or that the act was fairly within the implied powers incidental to his office, or that the corporation was estopped to deny his authority by reason of having accepted the benefits of the contract.[6] Second, the mere affixing of the signatures to the document did not conclusively prove that there was a binding contract. In addition, there must be a delivery, not in the traditional sense of a manual transfer, but in the sense that it was the intent of the parties to have the document become legally operative at some

---

6. Memorial Hospital Association v. Pacific Grape Product Co., 45 Cal.2d 634, 290 P.2d 481, 482–483, 50 A.L.R.2d 442 (1955).

definite point in time, however such intent might be indicated.[7]

■ Finally, defendant contends that the trial court erred in its determination that defendant must guarantee the duties which plaintiff owed to its members and that defendant was estopped from denying that plaintiff was its agent.

The trial court proceeded on the theory that the developer had a continuing duty to maintain the roads and water system within the tract and that defendant, as successor in interest to the developer, assumed these responsibilities. However, since the developer had delegated these duties to plaintiff, it became defendant's agent, and defendant was obligated to guarantee the performance of the duties by plaintiff to its members or other lot owners.

There is no evidentiary or legal basis to sustain the determination of the trial court.

The judgment of the trial court is reversed, and this cause is remanded with an order to enter judgment in accordance with this opinion. Costs are awarded to defendant.

HENRIOD, ELLETT and TUCKETT, JJ., concur.

CROCKETT, J., concurs in the result.

7. Yee v. Okamoto, 45 Haw. 446, 370 P.2d 463, 466 (1962).