2004 UT App 149

**J. Rodney DANSIE, Plaintiff and Appellant,**

v.

**Hi–Country Estates Homeowners Association, a Utah non-profit corporation, Defendant and Appellee.**

No. 20030088.

Court of Appeals of Utah.

May 6, 2004.

George A. Hunt, Williams & Hunt, Salt Lake City, for Appellant.

Dale F. Gardiner, Parry Anderson & Gardiner, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

¶ 1 J. Rodney Dansie appeals the district court's findings and conclusions regarding the existence of an easement over subdivision property belonging to Hi–Country Estates Homeowners Association (Hi–Country), a

Utah non-profit corporation. We reverse in part, affirm in part, and remand in part.

## BACKGROUND

¶ 2 Dansie owns two forty-acre parcels adjacent to the Hi–Country subdivision. Dansie initially filed suit more than ten years ago. In his complaint, he alleged various theories supporting the existence of an easement over Hi–Country's roadways. Hi–Country denied the existence of an easement. However, during the course of the proceedings, Hi–Country never denied Dansie's right to use the roadways. Instead, it maintained that Dansie's parcels were subject to Hi–Country's covenants and bylaws. It claimed that Dansie owed Hi–Country for past-due fees, but that as a member of Hi–Country, Dansie was entitled to ingress and egress over the subdivision roads as are other association members. After trial, the district court determined Dansie's parcels were, in fact, subject to Hi–Country covenants and bylaws, and entered judgment for past-due fees. Thus, the district court did not reach a determination of Dansie's claim of an easement, ruling the issue was moot.

¶ 3 In *Dansie v. Hi–Country Estates Homeowners Assoc.*, 1999 UT 62, ¶ 26, 987 P.2d 30 (*Dansie I* ), the Utah Supreme Court reversed the district court's determination that Dansie's parcels are subject to Hi–Country's covenants and bylaws. It remanded the case "for determination of Dansie's claim of an easement across the Association property" because the issue was no longer moot. *Id.* at ¶ 29.

¶ 4 On remand, Dansie claimed that Hi–Country had, before *Dansie I,* stipulated to the existence of an easement. He argued that because Hi–Country had never disputed Dansie's right to use of the Hi–Country roadways, Hi–Country therefore stipulated to an easement, and that became the law of the case. The district court agreed, concluding that Hi–Country stipulated to the existence of an easement. In its memorandum decision dated 27 October 2000, the district court referred to various statements and writings by Hi–Country's counsel to the effect that Hi–Country never disputed, and in fact the parties stipulated to, Dansie's right to access

Hi–Country's roadways. The district court ruled that stipulation amounted to an *express easement.* However, the district court determined that the easement is personal to Dansie, and is not appurtenant to his parcels.

¶ 5 The district court then limited the scope of the easement to Dansie's historic use, which amounted essentially to recreational ingress and egress, and some access for grazing. Finally, the district court apportioned to Dansie costs for maintaining the roadways. It determined that Dansie was liable for maintenance costs on a per-lot basis in the amount of $2,906.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 6 Dansie challenges the district court's determination that the easement is in nature personal to Dansie. We review all conclusions of law for correctness, granting the district court no deference. *See Orton v. Carter,* 970 P.2d 1254, 1256 (Utah 1998).

¶ 7 Dansie further challenges the district court's findings regarding what the parties intended to be the scope of the easement. We review all findings of fact for clear error, granting the district court great deference in its review of the evidence. *See* Utah R. Civ. P. 52(a) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."). "A trial court's factual finding is deemed 'clearly erroneous' only if it is against the clear weight of the evidence." *Doelle v. Bradley,* 784 P.2d 1176, 1178 (Utah 1989) (citation omitted).

■ ¶ 8 Finally, Dansie challenges the district court's conclusion that Dansie is obligated to pay for maintenance of the easement on a per-lot basis and on equal footing with the Hi–Country subdivision lot owners. This is an issue of law that we review for correctness. *See Orton,* 970 P.2d at 1256.

## ANALYSIS

I. Existence of the Easement

¶ 9 The district court determined that Hi–Country stipulated to the existence of an

easement in favor of Dansie. That stipulation, according to the district court, was contained in a letter from Hi–Country's counsel, and statements in open court. In the letter and statements, Hi–Country declared that it did not dispute Dansie's right of access, so long as Dansie's land was subject to the CC & Rs. Further, the trial court took evidence to determine the parties' intent regarding the nature and scope of the easement. It ultimately determined that the easement is personal in nature, and thus does not run with the land. It also limited the scope of the easement to prior use (i.e., ingress and egress for recreation, and limited grazing access).

 ¶ 10 Hi–Country did not appeal the district court's determination of the existence of an easement. It is axiomatic that we will presume the correctness of lower court rulings that neither party challenges on appeal. Accordingly, we proceed as if Hi–Country made an express stipulation to the existence of an easement.

A. Nature of Easement: In Gross or Appurtenant?

 ¶ 11 The district court determined the easement to be in gross,[1] rather than an easement appurtenant.

> An "easement appurtenant," sometimes called an easement proper, ... "is a privilege which the owner of one tenement has the right to enjoy, in respect to that tenement, in or over the tenement of another person." ...
>
> "The existence of an easement [appurtenant] involves the idea of two distinct tenements: a dominant estate, to which the right is accessorial; and a servient estate, upon which it is a burden or charge."
>
> ...
>
> "An easement in gross is a mere personal interest in the real estate of another, and is not assignable or inheritable.

It dies with the person, and it is so exclusively personal that the owner by right cannot take another person in company with him."

> The principal distinction between the two classes of easements seems to be that in the easement appurtenant there must be a dominant tenement, while no such element exists in an easement in gross.

*Ernst v. Allen,* 55 Utah 272, 184 P. 827, 829 (1919) (citations omitted); *see also Crane v. Crane,* 683 P.2d 1062, 1064 (Utah 1984) ("Since the claimed easement is not appurtenant to any particular dominant estate (none of the plaintiffs owns land adjoining defendants), it is an easement in gross."). Because easements in gross are generally disfavored, *see* 25 Am.Jur.2d *Easements and Licenses* § 12 (1996); 28A C.J.S. *Easements* § 12 (1996), "an easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate." 25 Am.Jur.2d *Easements and Licences* § 12; *see also* 28A C.J.S. *Easements* § 12 ("[A] strong presumption exists in favor of an easement being appurtenant, and the courts ... will favor an easement appurtenant over one in gross.").

¶ 12 The easement at issue here is an "easement appurtenant [because] there [is] a dominant tenement." *Ernst,* 184 P. at 829. The law presumes the easement to be appurtenant and to run with the land. Nothing in the record indicates the parties intended the easement to be personal in nature to Dansie. Thus, the district court erred in determining the easement to be in gross, and we reverse that ruling. We conclude instead that the easement is appurtenant to Dansie's land.

B. Scope of Easement

 ¶ 13 In its unchallenged determination that Hi–Country stipulated to the existence of an easement, the district court treated the easement as express.[2] Thus, the stipulation acted as a contract between the

---

1. The district court did not, however, use the term "easement in gross."

2. We are not persuaded by Dansie's argument that the district court considered the easement to be one of necessity. The district court's memo-

randum decision regarding the easement's scope stated "the parties had stipulated to *grant* [Dansie] an easement." (Emphasis added.) By definition, easements by necessity are not granted; only express easements are.

parties. The district court treated that contract as one whose terms are ambiguous regarding the easement's scope, because there was no express delineation of what the parties intended the scope to be.

¶ 14 If a term to a "contract is ambiguous such that the intentions of the parties cannot be determined by the plain language of the agreement, 'extrinsic evidence must be looked to in order to determine the intentions of the parties.' " *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88,¶ 19, 54 P.3d 1139 (citation omitted). Further, "[i]f a contract is ambiguous, the court may consider the parties' actions and performance as evidence of the parties' true intention." *Id.* The district court looked to the only evidence available that would indicate what the parties intended. Specifically, the court looked to Dansie's prior use of the easement to determine the scope to which Hi–Country acquiesced. Dansie, on the other hand, offered no evidence that the parties intended anything other than the status quo.

¶ 15 Dansie argues that the district court erred by limiting the easement to its historic use. He claims that there was in fact no evidence that the parties intended to *limit* the easement's scope as the district court did. Instead, he argues that his claim for an unlimited easement, as well as Hi–Country's statements that Dansie should have unlimited access on par with the other members of the homeowners association, stands as clear evidence of the parties' intent for Dansie to have unlimited access to the easement. These pieces of "evidence," however, are unavailing. Dansie's claim for an unlimited easement is entirely self-serving and is not evidence of the parties' intent at the time of the stipulation, and Hi–Country's statements are taken completely out of context. Thus, the record is devoid of any evidence that would support Dansie's position.

¶ 16 Regardless of the evidentiary or logical arguments for a broader or narrower scope, however, Dansie has not properly challenged the trial court's findings regarding the parties' intent. "When ambiguity exists [in a contract], the intent of the parties becomes a question of fact." *Id.* at ¶ 22 (quotations and citation omitted).

> When an appellant asserts that the evidence is insufficient to support the lower court's findings of fact, "we do not weigh the evidence de novo." Rather, we accord great deference to the lower court's findings.... Moreover, " 'to mount a successful challenge to the correctness of a trial court's findings of fact, an appellant must first marshal all the evidence supporting the finding and then demonstrate that the evidence is legally insufficient to support the findings even viewing it in the light most favorable to the court below.' "

*Hogle v. Zinetics Med., Inc.*, 2002 UT 121,- ¶ 16, 63 P.3d 80 (citations omitted).

¶ 17 Dansie has not demonstrated "that the evidence is legally insufficient to support the findings," *id.* (quotations and citation omitted), for at least two reasons. First, he has not marshaled the evidence that supports the finding. Second, the only evidence in the record regarding the intended scope of the easement is Dansie's prior use. This is sufficient evidence to support the district court's finding, and we thus do not disturb it on appeal.[3] Thus, we affirm the district court's rulings regarding the scope of the easement.

## II. Costs of Road Maintenance

¶ 18 "Absent any agreement on the question of maintenance of a private way, the burden of upkeep should be distributed between dominant and servient tenements in proportion to their relative use of the road, as nearly as such may be ascertained." *Aspen Acres Ass'n v. Seven Assocs., Inc.*, 29

---

**3.** As further support for the district court's finding, we note that Dansie himself insists that the basis of the existence of the easement is Hi–Country's acquiescence, through stipulation, to the easement. If it is true that Hi–Country acquiesced to the easement, and the parties expressed no contrary intention, then it seems only proper that the easement's scope would remain what it had been in the past. In other words, the easement came into existence only because Hi–Country acquiesced to the way Dansie had been using the easement in the past. Dansie cannot now have it both ways, claiming the existence of an easement by stipulation, but claiming further that the easement's scope exceeds the use to which Hi–Country stipulated.

Utah 2d 303, 508 P.2d 1179, 1183 (1973) (internal quotes and citation omitted).

¶ 19 In its memorandum decision determining that Dansie is obligated to pay a portion of the maintenance of the roadways, the district court acknowledged the rule in *Aspen Acres Ass'n* that costs should be divided proportionately. However, in its memorandum decision that actually determined the amount Dansie owed for maintenance, the district court did not base its ruling on Dansie's proportionate use. Instead, it determined that Dansie should pay for use of the easement on a per-lot basis, to be calculated in the same way lot owners in the Hi–Country homeowners association are assessed. Dansie does not challenge the district court's determination that he is obligated to pay some portion of the maintenance of the roadways covered by the easement. Instead, he challenges the district court's determination that he may be assessed on a per-lot basis.

¶ 20 A per-lot assessment may be a fair method of apportioning the costs of maintaining rights of way between several lot owners, given the parties' uncertain and changing uses of the roadways from day to day and year to year. However, that method is ordinarily agreed upon by the affected lot owners in a homeowners association's bylaws, CC & Rs, or other multilateral agreement. Dansie's ownership of his property is not subject to any such multilateral agreement with Hi–Country or its composite members. Further, per-lot assessments are not the default rule for determining costs. Rather, pursuant to *Aspen Acres Assoc.*, the district court must apportion the maintenance costs according to the parties' "relative use of the road, as nearly as such may be ascertained." *Id.*

¶ 21 A per-lot assessment, such as the district court applied here, does not apportion costs with reference to Dansie's "relative use of the road." *Id.* In fact, it appears from the record that the district court made no inquiry regarding Dansie's ongoing use of the road. Thus, we remand this issue for the trial court to consider evidence of Dansie's proportionate use of the roadways, and to determine the proportionate maintenance costs pursuant to that use.

CONCLUSION

¶ 22 The district court erred by concluding the easement is personal in nature. Instead, the easement is appurtenant to Dansie's land, and the ruling of the district court is reversed in this respect. The district court did not clearly err, however, in determining that the parties intended the easement's historic use to constitute its scope. Finally, the district court erred in applying a per-lot assessment of maintenance costs to Dansie. Instead, it should have determined Dansie's use in proportion to the total use of Hi–Country's members' use, and apportioned Dansie's maintenance costs accordingly. Thus, the district court's ruling in this respect is reversed and remanded for a proper determination.

¶ 23 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge, and PAMELA T. GREENWOOD, Judge.